

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

Travis Jones, Pro Se

PO Box #843

College Park, MD 20741

Mr.Travis.R.Jones@gmail.com

           Plaintiff,

   v.

Blue Ocean Realty LLC,                        Civil Action No. DLB 23CV2739

11620 Red Run Blvd suite #100

Reisterstown, MD 21136

Oaklee Village Baltimore LLC

3809 Clarks Lane Suite #100D

Baltimore, MD 21215

           Defendants,

### COMPLAINT FOR DECLARTORY JUDGEMENT, PERMANENT INJUCTIVE RELIEF, AND DAMAGES

1. This is an action for declaratory judgement, permanent injunctive relief, and damages for discrimination on the basis of handicap in the rental of housing pursuant to the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq. Defendants, the owners, managers, and/or employees of a residential apartment complex, discriminated against Plaintiffs by wrongfully denying rental housing on the basis of disability status.

Jurisdiction and Venue

2. Jurisdiction in this action is predicated on 42 U.S.C. § 3613 and 28 U.S.C. § 1331.

3. Venue is proper under 28 U.S.C. § 1391(b) in that the claim arose in the Southern Division of Maryland and Defendants conduct business in the Southern Division of Maryland.

Parties

4. Plaintiff Travis Jones, who is physically disabled, currently resides in Baltimore City, Mr. Jones sought rental housing at an apartment complex in Baltimore City, Maryland that is owned by Defendant Oaklee Village Baltimore LLC, and managed by Defendant Blue Ocean Realty LLC. Mr. Jones has been, and continues to be, adversely affected by the discriminatory acts, polices, and practices of the Defendants identified above and/or their agents Sharon Jones and Stanley Ross Jr.
5. Upon information and belief, Defendant Blue Ocean Realty LLC is the owner and/or operator of several Maryland property developments and ventures including Oaklee Village Baltimore LLC located at 3809 Clarks Lane Suite #100D Baltimore, MD 21215.
6. Upon information and belief, Defendant Oaklee Village Baltimore LLC owns and/or operates Oaklee Village Apartments located at 1001 Arion Park Road Baltimore, MD 21229.
7. Upon information and belief, Stanley Ross Jr. was, at all times relevant to the events at issue in this action, a rental agent employed by Defendant Blue Ocean Realty LLC at the Oaklee Village Apartments development located at 1001 Arion Park Road Baltimore, MD 21229.
8. Upon information and belief, Sharon Jones was, at all times relevant to the events at issues in this action, a property manager employed by Defendant Blue Ocean Realty LLC at Oaklee Village Apartments development located at 1001 Arion Park Road Baltimore, MD 21229.

Factual Background

9. Travis Jones (Mr. Jones) is 42 years old. Mr. Jones was not born with a disability. Rather, his disability arises from a bus accident that occurred in September of 2006 when Mr. Jones was 26 years old. Mr. Jones was a passenger on a NJ Transit Bus that collided with another bus outside the Lincoln tunnel in New Jersey just on the border of New York City, NY. At that time, Mr. Jones was living with his (ex-)wife and their two minor children at their home in Secaucus, New Jersey. Due to his injuries from the accident, Mr. Jones was left unable to work, and forced through pain into a regiment of never-ending pain killers and mood stabilizers prescribed by pain management and neurology doctors. From the accident, Mr. Jones continues to suffer with four permanently dislocated discs located in his upper neck and his lower back, that cause serve uncontrollable nerve pain and uncontrollable muscle spasms inducing severe discomfort in all his daily tasks. The nerve damage Mr. Jones suffers from due to the accident causes limited mobility and partial paralysis on his right-side causing Mr. Jones extreme difficulties in motion and when at rest.
10. Mr. Jones endured years of painful physically therapy and exercises to learn to walk again without the assistance of a walking cane or other walking aid. In 2008 Mr. Jones

separated from his wife due to the condition of Mr. Jones's new life as a disabled person. This has affected all aspects of his relationships with his now two adult children.
11. From 2006 to 2009, Mr. Jones fought with the state of New Jersey and the Social Security agency to secure disability funds due to the accident that left Mr. Jones unable to work and support himself and his family. In 2009, after an administrative hearing, with the help of outside counsel, Mr. Jones was awarded disability status by the Social Security Agency.
12. Mr. Jones's separation from his (ex-)wife caused him immense hardships and struggles in 2008, unable to find substantial employment or secure housing due to his injuries, Mr. Jones endured two years of homeliness in the streets [of New York City, NY] before being able to secure housing in Jersey City, NJ in January of 2010, after the award of his disability status in the later part of the previous year 2009. Although Mr. Jones is physically disabled, he is still capable of living independently. In particular, he does not require at this time, any special facilities or structural modifications in order for him to reside comfortably and safely in an apartment.
13. Since 2010, Mr. Jones and Ms. Nicole Floresca have shared the same physical address together.
14. Nicole Floresca (Ms. Floresca) is 43 years old. Ms. Floresca is the owner of Suds & Lites, a small business registered in New Jersey, that was established 2014 with help from family members and some minor financial support from her fiancé Mr. Jones.
15. Mr. Jones secured a second-hand vehicle for Ms. Floresca's business, Ms. Floresca and Mr. Jones agreed to share ownership of the vehicle. Ms. Floresca would register the vehicle and Mr. Jones agreed to help finance the registration as well as the monthly insurance payments and any maintenance related costs to the ownership of the vehicle. The use, benefit, and enjoyment of the vehicle was to be shared equally amongst Mr. Jones and Ms. Floresca per their mutual agreement. As per the arrangement Ms. Floresca registered the vehicle in New Jersey in 2017.
16. In 2017, they moved to Maryland care for Mr. Jones's sick mother in College Park, MD. During Ms. Floresca's and Mr. Jones's stay in College Park, MD.
17. In late 2019, The Covid Epidemic started in Maryland, Staying with friend because of the state of emergency and lockdowns-
18. In 2020, Mr. Jones and Ms. Floresca began looking for an apartment to share in Maryland. The couple were relying on a friend's recommendation when they began to look into Oaklee Village Apartments located in Baltimore City, MD.
19. Mr. Jones and Ms. Floresca agreed that Mr. Jones would apply for the apartment.
20. On July 17th, 2020 based of their friend's recommendation, Mr. Jones applied for a 1 Bedroom, 1 Bath w/ Den apartment after completing the online rental application and paying the $25 application fee. The advertised online rate for the unit was $850/monthly plus electricity. There was no mention of income requirements when applying to Oaklee Village Apartments. However, on the application it did ask for monthly income amount which Mr. Jones provided.
21. Mr. Jones on July 20, 2020, received a phone call [Voicemail] from Stanley Ross Jr. {Leasing Consultant for Oaklee Village Apartments} congratulating Mr. Jones on the approval and informing Mr. Jones that he just needed to provide two (2) forms of ID, a source of income, renter's insurance declaration, and BG&E bill transferred to Mr. Jones's name page prior to moving in. However, it was required that a security deposit be

provided within 72 hours for them to ensure the unit was held. Mr. Ross Jr. stated a move in date of September 1, 2020 once they receive the security deposit.
22. That day Mr. Jones received an email from Mr. Ross Jr. confirming and informing Mr. Jones that he was approved for the apartment along with an email attachment titled: "Approval Letter (I) Mr. Travis Jones" that stated my new address of 3436 Colchester Road Unit# 356 Baltimore, MD, 21229. In the email, it's stated his Water Utility was already set up. This document states a move in ready date of September 14, 2020. The email outlined the steps Mr. Jones needed to take to sign lease and pick up the keys for the unit. <Timestamp: 1:21PM>
23. Mr. Jones on July 21, 2020, dropped off at the Oaklee Village Apartments rental office located at 1001 Arion Park Road Baltimore City, MD 21229, a money order of $850.00 (as required) for security deposit to hold unit #356.
24. Mr. Jones called the rental office at Oaklee Village Apartments to verify receipt of his security deposit. Mr. Jones spoke to Mr. Ross Jr. who confirmed receipt of Mr. Jones's security deposit and stated he would send a follow-up email as confirmation of security deposit and criteria to sign lease and pick up keys.
25. This was again confirmed via email on the same day, from Mr. Ross Jr. confirming that he had received Mr. Jones's deposit via email attachment. Email attachment titled: "Approval Letter (II) Mr. Travis Jones", that contained another approval letter updated to reflect the tender deposit for the apartment. This new document reflects a revised move in-date of October 1, 2020. <Timestamp: 4:10PM>
26. On July 24, 2020, Mr. Jones received an email from Mr. Ross Jr. informing Mr. Jones that he needed to provide documentation. <Timestamp: 10:26AM>
27. Mr. Jones on September 15, 2020, called the rental office of Oaklee Village Apartments to speak with Mr. Ross Jr. about scheduling a walk-through inspection of the apartment to see if he would need any special accommodations for his disability. Mr. Ross Jr. said that was not possible, that the apartment was still occupied and that Mr. Jones would need to reschedule the walk through at a later date. Mr. Jones was not given a later date by Mr. Ross Jr.; Mr. Jones was instructed to contact the office at a later time in the following weeks. Mr. Jones inquired with Mr. Ross Jr. if it was possible to hand in all paperwork on day of lease signing and picking up keys because of the Cov-ID lockdowns, state of emergency in Maryland. Mr. Ross Jr. agreed that it would be okay.
28. On September 16, 2020, Mr. Jones called the rental office of Oaklee Village Apartments to speak with Mr. Ross Jr. in regards to their renter's insurance policy requirements as well as scheduling a walk-through inspection. Mr. Jones wanted to also confirm the address of the apartment and Baltimore Gas & Electric as the utilities. Mr. Jones mentioned to Mr. Ross Jr. he was going to purchase the renters insurance policy for the unit, and confirm the move-in date of October 1, 2020. There was some confusion, Mr. Ross Jr. stated that he was giving Mr. Jones a different apartment unit, unit #346. Mr. Jones reminded Mr. Ross Jr. that Mr. Jones had already given them his security deposit as requested to hold the unit #356. Mr. Ross Jr placed me on hold to verify Mr. Jones unit, when Mr. Ross Jr. returned, he confirmed Mr. Jones's unit #356, Mr. Ross Jr. mentioned that Mr. Jones's unit #356 will be available on updated schedule of October 8, 2020 and needed to schedule the walk-through inspection closer to that time.

29. Mr. Jones received an email from Mr. Ross Jr. with an attachment titled: "Approval Letter (III) Mr. Travis Jones", stating my approval for the apartment and revised move-in date of October 8, 2020 <Timestamp: 4:28PM>
30. After Mr. Jones's conversation with Mr. Ross Jr., upon learning again of Mr. Jones's revised move-in date, Mr. Jones decided to wait until October to purchase the rental insurance and utilities.
31. On October 1, 2020 Mr. Jones received an alarming email from Mr. Ross Jr. stating that documentation needed to be provided by October 2, 2020 or Mr. Jones's application would be revoked. <Timestamp: 11:42AM>
32. The day of October 2, 2020, Mr. Jones received a voicemail that morning from Mr. Ross Jr. indicating that the move-in date will need to be delayed another week, due to the prior tenant's delay in vacating the property.
33. In that voicemail from Mr. Ross Jr., a new revised move-in date of October 15, 2020.
34. Mr. Jones, feeling anxious that he would lose the apartment, hand delivered the documents to Oaklee Village Apartments per Mr. Ross Jr.'s email request on October 1, 2020. The documents included Mr. Jones's Maryland state ID, Louisiana birth certificate, and Social Security Award Letter stating a monthly source of income, which was photocopied and given back. Mr. Jones also informed the Mr. Ross Jr. that he will be handing in the last documentation requirements (renters' insurance and utilities name change) on the day he is to sign the lease and pick up the keys. Mr. Ross Jr. said that it would be okay.
35. Mr. Jones on October 3, 2020, purchased renters' insurance with State Farm Insurance for the address of 3436 Colchester Road Unit #356 Baltimore, MD 21229 with an effective date of October 1, 2020. Including adding Oaklee Village Apartments as an interested party.
36. Mr. Jones called and spoke with Baltimore Gas & Electric to open an account, they confirmed Mr. Jones's service date of October 1, 2020 and service address of 3436 Colchester Unit #356 Road Baltimore, MD 21229 as requested by Mr. Ross Jr.'s email and the attached approval letters sent to Mr. Jones.
37. On October 5, 2020, Mr. Jones received an email from Mr. Ross Jr. stating that Mr. Jones do not meet the "income requirements" to move into the apartment that Mr. Jones placed a security deposit on and was "approved" for in the previous voice & email communications Mr. Jones received for the past four months.
38. Attached to this email was a document that Mr. Ross Jr. said was Blue Ocean Oaklee Village Apartment income qualifications for the apartment. <Timestamp: 9:22AM>
39. On October 6, 2020 that morning Mr. Jones received a call from Mr. Ross Jr. and was immediately hung up on. Called lasted 00:02 seconds on Mr. Jones's cell phone call log.
40. Mr. Jones received another email from Mr. Ross Jr. asking Mr. Jones to arrange the pickup of his security deposit. <Timestamp: 9:25AM>
41. Mr. Jones replied to Mr. Ross Jr.'s email regarding the new MD law making it illegal for a company to deny housing due to source of income. Mr. Jones asked him to please reconsider their position on this matter. <Timestamp: 3:51PM>
42. On October 7, 2020 Mr. Jones sent an email to Mr. Ross Jr. to follow up on my previous email about denying my application. Mr. Jones also asked for an inspection of the apartment if available. <Timestamp: 2:47PM>

43. That same day, Mr. Ross Jr. emailed Mr. Jones back stating that he forwarded Mr. Jones's email to his property manager, also Mr. Ross Jr. stated in the email, that the property manager tried and failed to contact Mr. Jones the previous night. Mr. Ross Jr. goes on to state that per guidelines of Oaklee Village apartments that Mr. Jones do not meet their income requirements, and he has been diligently trying to reach Mr. Jones to discuss "other options". <Timestamp: 2:56PM>
44. Mr. Ross Jr. in his email states: "I have reached out to numerous times via phone and email with no response from you to discuss other options for you to take." Mr. Jones alleges this statement was a lie, Mr. Ross Jr. called Mr. Jones once previously on October 6, 2020 and hung up without saying anything after Mr. Jones answered the call. Mr. Jones alleges that Mr. Ross Jr. is intentionally distorting facts to cover his unprofessional behavior and give the false appearance of compliance to the law. Mr. Ross Jr. did not email Mr. Jones any details for other options Mr. Jones could take. No alternative properties were mentioned to Mr. Jones.
45. Mr. Ross Jr. has had no problems prior to this communication of reaching out via email or phone call to communicate with Mr. Jones in previous days.
46. As per Mr. Jones's phone records Mr. Jones has no logs of any phone calls from Oaklee Village apartments except for the two (00:02) second call on October 6, 2020. Mr. Jones has no calls or voicemails from Mr. Ross Jr. or his property manager Sharon Jones, that Mr. Jones has not identified here.
47. Later Mr. Jones received an email from Sharon Jones, in the email she appears to be talking to Mr. Ross Jr. informing him to tell Mr. Jones that Mr. Jones's cell phone is not active and for Mr. Ross Jr. to verify Mr. Jones's phone number. <Timestamp: 2:58PM>
48. Within ten minutes Mr. Jones receive a second email from Sharon Jones, in the email it again appears to Mr. Jones that she is communicating with Mr. Ross Jr.. she informs him that he can inform Mr. Jones to contact her directly. In the next sentence, she makes a defamatory, prejudice, voluntary statement against Mr. Jones: "…guess he didn't 'qualify' to pay (his) phone bill either. [smirking emoji sign]". <Timestamp: 3:05PM>
49. After that discriminatory statement that made Mr. Jones feel humiliated, confused, he picked up his security deposit from the rental office.
50. On November 24, 2020, Mr. Jones emailed Sharon Jones and cc: Stanley Ross Jr., Mr. Jones asked her who her supervisor was. <Timestamp: 12:57pm>
51. Sharon Jones reply email "I'm sorry…. who is asking? How may I help you? <Timestamp: 1:05PM>
52. Mr. Jones replied to her email stating that he had a complaint against her and would like to know who her direct supervisor was and asked that she please provide that information.   <Timestamp: 2:22PM>
53. After rejecting Mr. Jones's reasonable request for problem escalation to her direct supervisor, Mr. Jones was humiliated and angered since he was never allowed the opportunity to speak with someone at Defendants Blue Ocean Realty LLC rental office, to resolve this dispute sooner.
54. The record of communications ends without Ms. Jones every acknowledging or answering Mr. Jones's request.
55. Mr. Jones has continued to search, and is continuing to search for an apartment that would meet his needs, but, so far, he has been unable to locate such an apartment. As of

this date, Mr. Jones has been forced to live in a small room of a friend's apartment, which is a mouse and cockroach infested apartment for more than 36 months.
56. The Defendants' response was particularly cruel and inappropriate because Mr. Jones's request(s) was reasonable and necessary to allow Mr. Jones equal access to housing he so desperately sought. Mr. Jones's efforts to pay the full month's rent as a security deposit were dismissed without due care.

**Injury to Plaintiff**

57. As a result of Defendants' actions described above, Plaintiff Wright suffered, and continues to suffer, irreparable loss and injury including, but not limited to, humiliation, embarrassment, emotional distress and a deprivation of his rights to equal housing opportunities regardless of his handicapped status.
58. In engaging in the lawful conduct described above, Defendants acted intentionally and maliciously and with callous and reckless disregard of the federally protected rights of Plaintiff Jones, violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq.

**COUNT 1**

**VIOLATION OF U.S.C. § 3604(f)(1): REFUSAL TO RENT**

59. Plaintiff repeat the allegations of paragraphs 1 through58 as if fully set forth herein.
60. Defendants, individually, and/or through the actions of their agents, have violated the Plaintiff's right under 42 U.S.C. § 3604 (f) by refusing to rent an apartment because of Plaintiff Jones's handicapped status.

**COUNT 2**

**VIOLATION OF U.S.C. § 3604(f)(1): FAILURE TO PROVIDE REASONABLE ACCOMMODATION**

61. Plaintiff repeat the allegations of paragraphs 1 through 60 as if fully set forth herein.
62. Plaintiff Jones's request for a reasonable accommodation under the Fair Housing Act, 42 U.S.C. § 3604 (f)(3)(B)
63. The accommodation requested was reasonable and would have been necessary to afford Mr. Jones equal opportunity to housing at Oaklee Village Apartments
64. The accommodation proposed would not have imposed an undue financial or administrative burden on the Defendants and did not require a fundamental alteration in the nature of its programs.

65. Defendants, individually, and/or through the actions of their agents, have violated the Plaintiff's rights under 42 U.S.C. § 3604(f)(3)(B) by denying Mr. Jones's request for reasonable accommodation

**PRAYER FOR RELIEF**

WHEREFORE. Plaintiff prays:

66. That the Court declare the actions of the Defendants complained of herein to be in violation of the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq.:
67. That Defendants be ordered to take appropriate affirmative actions to ensure that the activities complained of above are not engaged in again by them or any of their agents;
68. That Defendants, their agents, employees, and successors be permanently enjoined from discrimination on the basis of handicapped status against any persons in violation of the Fair Housing Act of 1968, as amended;
69. That appropriate punitive and compensatory damages be awarded to Plaintiff and against Defendants;
70. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Trail by jury is demanded on all issues.


Respectfully submitted,

_____ 10-06-23
Travis R. Jones, Pro Se